Good morning, Your Honor. May it please the Court, my name is Dori Bernstein. I represent the Equal Employment Opportunity Commission appellant. The EEOC sued Prospect Airport Services because it failed to respond effectively to repeated complaints of sexual harassment in the workplace. Rudolfo Lavez informed his superiors that Silvia Munoz passed him flirtatious notes, called him at home- Counsel? Yes, Your Honor. I know that neither your agency nor the plaintiffs are usually in here on behalf of a man who gets repeated unwanted sexual demands or overtures from a woman, so I'd be happy to have a case where the sexes are flipped. Do you have a case that's fairly analogous to this? What's your best Ninth Circuit case that's fairly analogous to this, where there are repeated unwanted sexual overtures and, as you have argued, an ineffectual response by the employer to the victim's complaint? Well, I would say the best case is Nichols v. Esteca, and even though that case did not involve sexual overtures by a female- Nichols v. Esteca. Oh, I'm sorry. The Nichols v. Esteca restaurant- Esteca restaurant. Yes. It's 256- I've got it. Okay. In that case, there was a male waiter whose coworkers and one supervisor ridiculed him because he did not conform to stereotyped views of male behavior. They referred to- That's really – that's why I asked you the question. It didn't seem quite analogous to me. What I'm looking for is it could be a man. That would be perfectly analogous. But it could also be a woman because the sex doesn't really matter, where a fellow employee keeps saying, come out and date me, have sex with me, and making obscene gestures to represent sex. And the person keeps saying, no, I'm not available for that, I don't want to. And they keep asking. And the victim goes to the boss and says, would you tell this person to quit bothering me? I don't want to go out on a date with this person. I don't want to have sex with this person. And the boss has an ineffectual talk. There are subsequent complaints. And the boss says, I guess in this case I'm just saying I'm too sexy for my shirt or some other way of passing it off. And I'm looking for a case like that. And it seems like it ought to be really easy because that kind of thing happens all the time. So which is the case that's like that? Well, each sexual harassment case is distinct on its own facts. You're correct, Your Honor, that it is unusual to see a case where a male is harassed by a female coworker. But it is clear from the Supreme Court's decision in Ancale that Title VII protects men from harassment as well as women from harassment. I understand you're talking, but you're not answering. I guess what I would say, Your Honor. Are you saying there is no Ninth Circuit case that's like that? I have not seen a Ninth Circuit case where a man – there is one case. I told you, I don't need it to be a man. Oh. Are you telling me there's not a case? Oh, you mean a female who's being harassed. Yeah. Oh. I guess I would say Ellison v. Brady, where there was a female who had a coworker who sent her several amorous letters and asked her out on dates, and she wasn't interested. She made it clear she wasn't interested. At first she told her supervisor about it. I was hoping for a routine Ninth Circuit case instead of a Supreme Court decision, because we ordinarily publish opinions if we're construing a Supreme Court decision and we do memorandum dispositions if it's a Ninth Circuit case. Well, I would say that Ellison v. Brady is the strongest case for – Are you talking about after it got back to us from the Supreme Court or the Supreme Court decision itself? There was no Supreme Court decision in Ellison v. Brady. Oh, didn't – oh, maybe I misremembered. I thought it went up. No, Your Honor. Ellison, although the standard that this Court adopted in that case, which is viewing the harassment from the perspective of the overall victim, was adopted by the Supreme Court in Harris v. Forklift, which is also a useful case to look at, because one of the things that Prospect is arguing is that basically the harassment here really wasn't that bad. And I think if you look at the harassment that was at issue in Harris v. Forklift, which was just – I think you are telling me that if you win, you need a published opinion, because you're short on authority, even though it seems such a straight-down-the-middle issue. I think it's a straight-down-the-middle issue, and I don't think we need a published opinion. I do think that the standards that have been established by this Court and by the Supreme Court say that persistent, unwelcome sexual advances and frequent teasing directed at an employee because of his sex are objectively offensive and sufficient to alter his working conditions in a discriminatory manner. That's all that's required, Your Honor. Counsel, it doesn't obviously make any difference whether it's a man or a woman in this case, right? Correct. But the standard is still the same. It's what the reasonable victim would feel. But is it what a reasonable man would feel, or is it a kind of a composite of the sexes, or what a reasonable woman would feel? Since this is a man, does it make any difference in terms of the reasonableness issue? Well, I think it's clear from this Court's decisions that you look at a reasonable person in the victim's position with the victim's essential characteristics, which in this case would be a man. Okay. So what we're talking about here then, and this maybe needs a little clarification, is the reasonableness standard that we're looking at here is what a reasonable man would feel in these circumstances. Is that correct? I think that's correct, Your Honor. Okay. And I know Judge Kleinfeld has asked you for a case on all fours. So what case in or out of the Ninth Circuit do you believe best clarifies that point, that when you're talking about a male who is being harassed, that the standard we look at is what a reasonable male would think of in that situation? I think the answer to that question is Nichols v. Pesceca, because in that case, one of the things that his coworkers made fun of was the female waitress that he was friends with. So it's that sort of thing, that he, Mr. Lamas said that coworkers were wondering if he was gay, because he didn't want to respond to her advances. And I think that there is a difference between welcome and unwelcome harassment. If the harassment and the advances are unwelcome, and he does not want to respond to those advances, and that is something that his coworkers were viewing as the basis to ridicule him, that can create a very hostile environment for a reasonable man. Would you agree that in one respect, this is kind of a close case, not so much in terms of the law, but in terms of how you look at this? If you have an, in quotes, reasonable man, you may have many men, maybe most men, who would be delighted, as was suggested in the record, whereas others, I gather, I gather that this gentleman had some religious leanings and was, this was part of his, had a recent death in the family or something like that. His wife had died, yes. Right. Does that play into our consideration here of what is reasonable? Is it a person's exact circumstances, or is it a reasonable man qua homo sapien? Well, I think there is a difference between whether the harassment is welcome and whether that, if it is unwelcome, and there's no question that it was, there's evidence that it was unwelcome in this case, would these unwelcome advances, the fact that many men would welcome this. If it's welcome, it's not harassment. Right. If it's unwelcome, it is harassment. And I get that point. There's kind of a stereotype that any man would welcome a woman inviting him to have sex with her. Right. I kind of doubt that the stereotype is true. I think that's accurate. For one thing, for a widower, it might be really upsetting. That's this particular case. For another thing, for any man in a workplace, I would think it would scare him half to death because he could be in a sexual harassment situation at the wrong end of it if the relationship turns sour. And for another thing, he might think if a woman was that unusually forward, there's something wrong with her and she's a dangerous person, mentally unstable or something. Are there any cases that discuss the reasonable man? In the one you cited, the Azteca restaurant case, it's really not about this. It's about reasonable men object to being called a faggot all the time. Right. But it's also the notion that a reasonable man would find ridicule based on failure to conform to those gender-based stereotypes. And in that sense ---- Well, there was some ridicule here as well, Your Honor, because ---- That's not really it. This deals with the stereotype that men want sex whenever they can get it. So it's not unwelcome because he must have wanted it. That's the stereotype that you're dealing with. And I want to know if there's a case that says you can't just decide the reasonable man, that all sexual overtures are welcome to a reasonable man. I'm not aware of a case that says that, but I think it's fairly self-evident, as Your Honor said. It is a stereotype and it is not true. Ellison versus Brady adopts the reasonable woman test, which seems to kind of create a notion of chaste women who never want sexual overtures made to them. And it implies that the reasonable man standard is something different. I wouldn't say that that's what Ellison says. I think what Ellison says is, as in that case, it was clear that this wasn't welcome to her. And the Court did distinguish that, look, some ways you could look at these letters as harmless, amorous pursuit, but that's not how it appeared to her, it's not how she experienced it, and it's not how a reasonable woman might experience it. And in this case as well, while some men might welcome it, it's clear he didn't, and Prospect failed to address that. I would like to reserve a little time for rebuttal. Thank you. Morning, Your Honor. Please support Thomas Murphy on behalf of Prospect Airport Services. Counsel, I have trouble understanding your side of the case. I'm surprised that there's not more authority. But here's the way it looks to me, and I want to lay it out so you can educate me out of my tentative impression. A woman is basically asking him to have sex with her, and he doesn't want to. Now, I don't know if he doesn't want to because he's a recent widower and it would make him feel bad about his wife, or if it's because of his religion, or because he finds her sexually unattractive, or what. But he doesn't want to. And he tells the boss he's got a problem, and the boss tells her, don't do it on company time. What you do on your own time is your own business, or something to that effect. She keeps doing it, and he talks to a couple other supervisors, and they tell him, just let it go, you know. Sing I'm Too Sexy for My Shirt. And he keeps getting bothered. Now, my thinking about the reasonable man is, for any of those reasons mentioned, he might not want to have sex with her, and it might really scare him to have her coming on to him all the time. The thing that immediately occurred to me, reading the briefs and record, is Potiphar's wife. You remember the Bible story? She says, either you have sex with me, or I'll say that you had sex with me when you didn't, and then you'll be executed. That's the way the sexual harassment situation could work. If a woman is coming on to a man, he rejects her. It seemed to me pretty clear that he's got a record. It's unwelcome. It seems the district judge said it's not severe and pervasive enough, and I just didn't understand that. What's your case? Well, Your Honor, first of all, I think that the Judge Dawson, when he said it wasn't severe and pervasive, also took into account that a lot of what Mr. Lamas testified to was basically self-serving statements without any corroboration. Are you saying this went to trial? I thought it was summary judgment. Well, let's say it's self-serving. Of course it's self-serving. The credibility is not before the judge on summary judgment. I disagree with you, Your Honor. First of all, in his deposition, his deposition was taken before the motion for summary judgment was done. Are you saying that self-serving statements cannot be considered to create a genuine issue of material fact? I think if you look at the Burrell case, that that's true. That's an extraordinary proposition. You're saying self-serving equals sham? Not in all cases, but in this case, what Judge Dawson said is... Wait, the guy says, I don't want sex with her, and the judge says, that's self-serving, so I'll treat it as though it's welcome? Are you saying that's how you get around a genuine issue of fact? Your Honor, what I'm saying is that Judge Dawson, in his opinion, looked at all the actions that took place after Prospect told Ms. Muniz to stop. And he said that those statements of this continued harassment, which were never reported, I guess there's an allegation that, are worth self-serving because of several factors. I don't care if they're self-serving. That point is simply mistaken as a matter of law. What I care about is whether he established a genuine issue of material fact. If he swore that he told a supervisor to get the woman to lay off, and the supervisor did not tell the woman to lay off and did not do anything to separate them, that's what I want to know. Is there testimony to that effect? There's testimony to the effect that the supervisor, the general manager, told her to stop or she would suffer further consequences. Is there testimony that he talked to a supervisor subsequently when she did not stop? There is a testimony from Prospect that they had no reports of any further conduct. And is there testimony from this fellow, I can't remember his name, that he did tell them? He says he did, but, Your Honor, if you look at Judge Dawson's opinion, Judge Dawson says Mr. Lamas said there was support for the fact that I did report these things. Look at my letter of March when I was demoted. In that letter, there's no reference whatsoever to this continued harassment. If you look at Mr. Lamas's initial complaint of discrimination, his amended complaint, his timeline to the attorneys, there's no mention of any of this continued harassment anywhere. What Judge Dawson did is he said that it's inconsistent testimony, and for that fact, he disregarded it in making his ruling on the motion for summary judgment. I asked your opposing counsel a little bit about this, and this is of great interest and concern to me. It seems to me that if it were a male who were the perpetrator here and a female who were the victim, we really wouldn't have a whole lot to talk about. Would you agree with that? Based on the reported decisions, I would agree with that. Okay. Do you agree that insofar as the case law is concerned, there is no difference between whether the victim, and I use that term in a generic sense, is a male or a female? I think that a reasonable male and a reasonable female, the standards would be different based on the conduct. In what way? I think, and again, going back to your Honor's statement, I think that there are certain stereotypes, there are certain beliefs that a female is less than skinned, if you will, than a male might be, and you have to take those factors into account. Okay. And this is what I'm trying to get a hold on. If the law is equal, regardless of which gender is involved here, then presumably the reasonable standard would be the same. And I gather what you're suggesting is that it's not, that if it's the male who is the, in quotes, victim, that the standard is different. Is that correct? It may be different, Your Honor, and I think the case law says that male and female for this purpose can be viewed differently. Okay. Let me, if this gentleman, Mr. Willamas, had said, gee, this is great, we wouldn't be here, right? That's true, Your Honor. Okay. So the real question here is the unwanted nature of the contact. If the contact is unwanted, repeated, pervasive, and a male is involved, why is that any different than how we would treat a female? Well, I think, Your Honor, just as I said before, males are viewed as more thick-skinned. By whom? In general. I mean, maybe that's a stereotype. Well, that's what I'm wrestling with, is, you know, we may be looking at an opinion here that would better delineate our law, and I think it's important to deal with this issue. Does our law contemplate the enshrinement of a stereotype about males versus females? I think that's a factor that has to be considered, yes, Your Honor. And what would your recommendation be? I think that the law needs to be somewhat more lax when it comes to specific situations involving males. So, in other words, if I understand you correctly, you're saying that for purposes of Title VII, males are treated differently than females? In this specific context, I think that it is possible that they should be. Is there any case law, any regulation, any statute that you can cite that would buttress your position? None that I'm aware of, Your Honor. So you're asking us to create a difference between males and females based upon, if you will, a macho stereotype? Well, I don't know if I use the word macho. No, I know. I'm not suggesting you would. But I think that in examining this, you have to consider the individual involved, and I do think that there are differences between a female employee who's subject to harassment and a male employee. Well, I have actually no trouble with that argument when you make it in regard to perhaps jokes and language. There are certain words in the English language that males use freely and females don't, and there are words that females use freely and males don't, like adorable. Women are always saying something's adorable, and men don't say adorable much. And there are words that men use and females don't that we ordinarily don't say in court, but we say them all the time out of court. And jokes. You'd be surprised if a male was offended, but unless the people knew each other well enough and had kind of a tacit or open agreement not to be offended, you might think females would be. But sexual overtures is different. I would think, for example, well, it must happen all the time, that single women in offices start coming on to married men, and the married men run for their lives. They don't get their lives complicated. I don't get where there's a stereotype that we can import into the law that sexual overtures to men are okay. I don't want to say that they're okay. There are certainly specific instances where they may not be, and in this case, when you're talking about sexual overtures, there's just one explicit letter that we're talking about. According to his testimony, there's constant sexual overtures, making gestures to imply fellatio, kissing him, constantly suggesting to him that they go out together. Well, Your Honor, I see that going, in any case, going out or going on a date is not the same thing as having sex. I mean, counsel, don't you have to have us adopt a different standard of sexual overtures? For men versus women in order to be successful in this case? On this specific point, I believe I do. But there's another point in this case that did all of this really affect the condition of his employment? In order for, even if you find that the conduct was wrong, you have to find that the work environment was intimidating, it was hostile, it was threatening. And here you have Mr. Lamas, by his own testimony, has said, I still was able to do my job. I was embarrassed. I was irritated. But again, counsel, if we were talking about a woman as the victim, would we be having this conversation on that particular issue? I think we could. What about the concept of constructive termination? Aren't there legions of cases? That's not involved in this case, Your Honor. He wasn't terminated. No, I understand. I say constructive termination, where the victim feels so much under pressure that, let's use an example, she just can't work there anymore, so she quits. Correct. Isn't that the corollary of what we're talking about here? It could be, Your Honor, but it didn't happen in this case. He continued to work, continued to perform his job. He was terminated because he violated a rule that had nothing to do with this crime. Of course, you know, that's a typical kind of business reaction on occasion when somebody is giving a bad time. You know, this is a retribution. I mean, there's a whole class of lawsuits that flow from that sort of thing. So I trust that, at least insofar as that part of our conversation, you're not going to suggest that we really need to focus entirely on the fact that this guy allegedly wasn't performing and that's why he was let go. Is that what you want us to rely on? Well, Your Honor, he was let go because he violated a specific rule. And that happened after he had made his complaint, right? According to him. But he was disciplined on two occasions. Once he was demoted, once he was terminated. And did that, did either of those instances occur before any of his claims about sexual harassment? Neither of those two instances, but he had been constantly disciplined for tardiness and doing other things that were in violation. The two violations that we're talking about, the one in March and the one he was terminated for in July, were violations of not only Prospect's rules, but the Department of Transportation rules in dealing with disabled passengers. Prospect, if it doesn't follow those rules, could conceivably lose its contracts with the airlines. Those are terminable within 30 days. And the Department of Transportation assesses fines for not dealing with disabled passengers. He was terminated because he refused to take care of a disabled passenger that he was assigned to. Counsel, it occurs to me, when I look at your argument, the thick-skinned man argument, and I look at the statute, I remember when the statute was passed, and I remember the words, it prohibits discrimination. We've gotten very far from what the statute says and what it was meant to do, which was prohibiting discrimination. What happened was, I guess the Supreme Court, and I think it was Meritor, adopted Catherine MacKinnon's notion that women are offended by sex and therefore having sexual indications in the workplace discriminates against women, a basic notion of MacKinnon and Dworkin. And the Supreme Court bought that, and that's pretty much the fountain of sexual harassment law. We're now coming, if we accept your argument, to the notion that not only is discrimination not prohibited, discrimination by sex is required. In the workplace, men are not to be protected from unwanted sexual overtures, but women are to be protected from unwanted sexual overtures. I don't think that's my argument at all. That's really getting pretty far afield from the words of the statute. I don't think that's my argument at all. What I'm arguing is that when you apply a reasonable person's test, you have to be aware of the characteristics of the individual. Here, you have a male. Other cases, you have a female. And you have to take into account, maybe it is taking into account stereotypes, but you have to take into account. I think you're saying we have to adopt the stereotype that no sexual overture to a male is unwanted. I'm not saying that at all. There can be sexual overtures to a male that are clearly improper and unwanted. In this case, one letter, I don't believe, does that, and that's what Judge Dawson found. Well, you want us to treat everything the man says as a lie unless it's supported by documentary evidence. But, obviously, we can't do that on summary judgment. We have to treat his testimony as true because he has not yet had an opportunity at trial to see if a jury believes it. But, Your Honor, I also think the law says that the judge on ruling on a motion for summary judgment can look at unsupported allegations. If you look at the Burrell case, you look at the Ellison case, they both deal with that issue. Here, not only are they unsupported, but they're inconsistent with the documentation that exists in the record. Counsel, just one last point here. When we analyze the reasonable person standard here, are we to analyze it in terms of a reasonable man with this particular man's life situation, widower, religious, is that the standard or is it just men generally? I think it's men in general, Your Honor, because if you're going to analyze it with his specific characteristics, you're not doing an objective test. What you're doing is a subjective test. You're putting all men in exactly his position with all his characteristics. So then why even apply an objective test? But how does that square with, for example, disabilities and things like that? Those are obviously particularized. Everybody doesn't have the same disabilities. How can it be a general standard? Well, it could be an objective standard is a reasonable person who has or is in that same class, the same class of the people with disabilities. But to go further and say, well, you have an individual who says he's a minister, who's a widower, who's undergoing psychiatric care, you're basically getting away, in my mind, from the objective standard and you're just limiting it to a subjective standard. I think the subjective standard you're asking for, it sounds to me like something out of Playboy or some bad Hollywood movie. My guess is that every married man in the room would find sexual overtures from people other than their wives unwanted. And if they were repeated, would be made extremely uncomfortable by them. I just don't get why we should assume what you're suggesting that we should assume. Well, I don't. Lastly, the only point I'll make, Your Honor, when you look at Mr. Lamas' own statement, that he assumes that all men, that most men would be flattered or would welcome these, but he doesn't because he's a minister and his Christian beliefs. I think you can take his statement and apply that in analyzing this in an objective standard. So the law is all men are dogs. That's what you're urging. I don't think so, Judge, but thank you. Thank you, counsel. We want you to know that Judge Kleinfeld is not impugning dogs. Counsel? Just very briefly, Your Honor, I think the bad Hollywood movie you're thinking of is called Fatal Attraction. And I think you're going to fully comprehend what's at issue in this case. Title VII, one of its goals is to break down gender based stereotypes in the workplace rather than to, as Your Honor said, enshrine them. Counsel, can I ask you as well? Sure. We're obviously wrestling with the standard here, and I want to be sure I understand the ELC's position on this. The reasonable standard speaks, you know, it's a reasonable person, reasonable woman, reasonable man. Is the reasonable man in this case a man who has the major characteristics of this victim, i.e., a widow or a Christian minister, or is it just somehow men in general? Well, I think that's a good question, and I was wondering about that myself as I was wrestling with this case. I think you have to be careful not to so particularize the individual that you wind up with a, quote, unquote, eggshell victim situation. There is an objective component. But I think what's really key here, Your Honor, is assuming that this is unwelcome, that what Prospect is relying on is the fact that he, that Mr. Lama said, maybe a lot of other guys would like this, but I don't, it embarrasses me. If it's unwelcome, it is offensive, and it would be offensive for a reasonable person if it's unwelcome. So it is the unwelcomeness that is to inform the reasonable person. That's correct, Your Honor. If it's not the characteristics of the man or the woman, it is the unwelcome nature of it that informs that. That's exactly correct. So you take men in general, but it's men in general to whom this is unwelcome. That's right. And unwelcomeness is purely subjective. If there are no further questions, that concludes my argument. Thank you, counsel. Thank you, counsel.
judges: Nelson T. G., Kleinfeld, Smith M.